The Covenant Club of Chicago, Appellant, v. John R. Thompson, Jr. et al., Appellees.

Gen. No. 34,114.

Heard in the second division of this court for the first district at the February term, 1930. Opinion filed December 16, 1930.

312

Joseph F. Grossman, for appellant.

Mayer, Meyer, Austrian & Platt, for appellees.

Mr. Presiding Justice Scanlan delivered the opinion of the court.

The Covenant Club of Chicago, a corporation, sued John R. Thompson, Jr. et al., executors of the estate of John R. Thompson, deceased, in an action on the case. Defendants' general demurrer to the declaration was sustained, and plaintiff electing to stand by its declaration judgment was entered against it for costs. This appeal followed.

Plaintiff originally sued John R. Thompson et al., and upon a trial before the court, with a jury, at the conclusion of the evidence for plaintiff the trial court, on motion, instructed the jury to find all of the defendants not guilty. Judgment was entered on the verdict and an appeal to this court followed. We held (see *Covenant Club v. Thompson*, 247 Ill. App. 122) that an action for damages by a landowner against the landlord (Thompson) and tenants of adjoining property, because of the interference with the work of constructing a building on plaintiff's land and the extra expense incident thereto as the result of the flow of sewage and water from adjoining premises, is not an action to recover damages to real or personal property, and that the death of the landlord abated the cause of action as to him, but that it survived as to the other defendants. After remandment plaintiff filed a declaration in which the sole defendants named were the executors of the estate of Thompson. This declaration consists of four counts. The first alleges (*inter alia*) that plaintiff was lawfully possessed of a certain parcel of land (describing same) and that Thompson was then possessed of certain lots or parcels of land (describing same), all of which adjoin the land of

plaintiff on the west and south sides thereof, and that said land of Thompson was then improved with buildings and appurtenances which were then and there under his control and it became and was his duty not to permit the waste water and sewage from his premises to overflow or be diverted to and cast upon plaintiff's land; that on July 1, 1923, and for a long time thereafter plaintiff was using its land and was erecting a building thereon for its use and occupancy, and was digging wells upon its land for caissons as a foundation for said building, and was excavating its land for the basement of said building, of which Thompson had knowledge or notice; that he then and there wrongfully and carelessly caused or permitted the sewage and waste water from his premises to overflow and to be diverted to and cast upon plaintiff's land and into the caisson wells and excavations upon said land, and that plaintiff was thereby obliged to and did lay out and expend large sums of money for pumping and draining said sewage and waste water from the land and caisson wells and excavations upon plaintiff's land, to the damage of plaintiff, etc. The second count is identical with the first save that it alleges the duty of Thompson to provide means for drainage of the sewage and waste water from his premises, and the violation of his duty in this regard by failing and neglecting to provide such means, and that by reason thereof the sewage and waste water overflowed and was diverted to and cast upon plaintiff's land, to the damage, etc. The third count is identical with the first save that it charges that the buildings and appurtenances of Thompson were equipped with an artificial system of drains for sewage and waste water, and that he was then in control of the artificial system of drains and it became and was his duty to keep and maintain same in such condition that the sewage and waste water from his premises would not run or overflow or

be diverted to and cast upon plaintiff's land; that he wrongfully and carelessly permitted the artificial system of drains to be and remain in such condition that the sewage and waste water from his premises ran and overflowed and was diverted to and cast upon plaintiff's land, to the damage, etc. The fourth count charges that it was the duty of Thompson to keep and maintain his artificial system of drains in good working condition and repair, and that he failed and neglected to keep and maintain same in good working condition and repair, and that the same was permitted to be and remain broken, cracked, disconnected, obstructed and clogged so that the sewage and waste water from his premises leaked and flowed and backed out of said system of drains and ran and overflowed and was diverted to and cast upon plaintiff's land, to the damage, etc.

Plaintiff contends that "this action is for a temporary, physical, visible injury to real property caused by a continuous and repeated nuisance. The damages, as they accrue, 'run with the land' and are not personal," and that "such an action survives by the common law" and "by virtue of sec. 123 of the Administration Act," Cahill's St. ch. 3, ¶ 125. Defendants contend that "this is not an action to recover damages for an injury to real or personal property, but plaintiff seeks damages for interfering with the progress of his building" and that "the same question was decided by this court in favor of our contention in the case of *The Covenant Club of Chicago v. John R. Thompson et al.*, 247 Ill. App. 122, the only difference between that case and this being that in this case plaintiff has omitted one item of damages which he sought to recover in the former case." In our former decision we said: "In its declaration the plaintiff does not seek to recover damages because of any injury to the realty. It seeks compensation for the delay in the work of con-

struction as the result of the sewage and waste water that flowed upon its land and the expense incident thereto. The theory of fact of the plaintiff upon the trial was that the water and sewage leaked out of a broken, cracked, disconnected, obstructed and clogged system of drains, and flowed upon the land of plaintiff and delayed the work of construction, and caused the plaintiff to be put to extra expense. No evidence was introduced tending to show damages to the plaintiff because of any injury to the realty. In the brief of the plaintiff filed in this court before the death of John R. Thompson, counsel plainly takes the position that the suit is one for damages because of the interference with the work of construction of the building and the extra expense incident thereto. It is very clear that this is not an action to recover damages for injury to real property." A different situation now confronts us. The propriety of the action of the trial court in the instant case in sustaining a general demurrer must be determined solely from an inspection of the new declaration. The particular words in the former declaration that lead us to the conclusion that plaintiff, in its declaration, sought damages only for the delay in the work of the construction of the building, have been omitted from the present declaration and plaintiff does not now seek compensation for the delay in the work of construction, but damages "for a temporary, physical, visible injury to real property caused by a continuous and repeated nuisance." The allegation in the instant declaration that plaintiff, at the time that the sewage and waste water flowed upon its land, was erecting a building upon the land, does not change the nature of the action.

Section 123 of the Administration Act, Cahill's St. ch. 3, ¶ 125, provides that "in addition to the actions which survive by the common law, the following shall also survive: Actions of replevin, . . . actions to

recover damages for an injury to real or personal property . . . '' But defendants contend that as the declaration fails to allege that defendant created the alleged nuisance it was absolutely necessary to allege that plaintiff gave defendant notice to abate the same. We find no merit in this contention. Undoubtedly there are nuisance cases in which it has been held that a notice to abate is necessary. As stated in *Martin v. Chicago, R. I. & P. Ry. Co.*, 81 Kan. 344, 105 Pac. 451, 453 (cited by defendants): ''The reason given for the rule that notice and a request to abate must be given to one who becomes the owner of a nuisance which was constructed by another is that such a person may be ignorant of the character of the thing denominated a nuisance, and that a notice and request to abate would place him upon the same ground as the original wrongdoer. If he is not ignorant, the reason for giving notice fails and the rule disappears. In this case the evidence shows that the knowledge of the defendant of the nuisance in question was equal to or better than that of the plaintiff. . . . Notice of and a request to abate the nuisance was unnecessary in this case.'' *Groff v. Ankenbrandt*, 124 Ill. 51 (cited by defendants), like several other cases cited by defendants, was one in which the defendant was charged with obstructing the natural flow of a stream or other natural body of water and thereby diverting it upon the lands of the plaintiff. It was there held that ''where a party comes into possession of land, as grantee or lessee, with an existing nuisance upon such land, and he merely permits the nuisance to remain or continue, he can not be held liable in an action for damages, until he has been first notified or requested to remove the nuisance.'' The court further held that it must be presumed from the declaration that the defendant did not erect or place the levee or embankment and that because the defendant came into possession of the land, as grantee

or lessee, with an existing nuisance upon the land, and he merely permitted it to remain or continue, it was the duty of the plaintiff to serve notice on the defendant of the nuisance and a request to remove it, before any action could be brought; that "a plaintiff ought not to rest in silence and presently surprise an unsuspecting purchaser by an action for damages, but should be presumed to acquiesce until he requests a removal of the nuisance," but the court plainly indicated that even in a case like the one before it the defendant would be liable, without any request or notice to him to remove the same, if there had been "some active participation in the continuance of the nuisance, or some positive act evidencing its adoption." Plaintiff contends, and with force, that the rule announced in *Groff v. Ankenbrandt* has no application to a case like the one stated in the instant declaration. Defendants also cite *Fitzgerald v. Goldstein,* 107 N. Y. S. 614. In that case the sufficiency of the declaration was not involved and the court did not hold that notice to abate the nuisance was necessary before the plaintiff could sue. It did hold that under the evidence the defects in the building in question were concealed and were such as would not have become known to the defendant through the exercise of ordinary care, and that plaintiff had failed utterly to prove negligence on the part of the defendant; that "the rule is well established that, in order to charge an owner with negligence in failing to make repairs, he must have notice, either express or implied, of the existence of the alleged defective conditions and a reasonable time after such notice to remedy the same." In *Neuman v. Steuer,* 119 N. Y. S. 168 (also cited by defendants), the sufficiency of the declaration was not involved. The decision of the court turned upon the evidence. The opinion states that the defendant did not create the nuisance and he had no actual notice of its existence;

"these being the facts, to establish the appellant's liability it was necessary to show that, by the exercise of reasonable care, he could have discovered and abated the nuisance. This was not shown." These last two cases do not support the contention of defendants that it was necessary for plaintiff to allege in the declaration that it had given defendants notice to abate the nuisance.

Each count of the instant declaration charges that the buildings and appurtenances from which the overflow occurred were then and there under the control of Thompson. The first count alleges that Thompson "wrongfully and carelessly *caused or permitted* the sewage and waste water from his said premises to overflow and to be diverted to and cast upon the land of the plaintiff." The third count alleges that he "wrongfully and carelessly *permitted* the artificial system of drains upon the premises to be and remain in such condition that the sewage and waste water from his said premises ran and overflowed and was diverted to and cast upon the land of the plaintiff." The fourth count alleges that he "failed and neglected to keep and maintain same in good working condition and repair, and same was *permitted* to be and remain broken, cracked, disconnected, obstructed and clogged so that the sewage and waste water from his said premises leaked and flowed and backed out of said system of drains and ran and overflowed and was diverted to and cast upon the land of the plaintiff." "Every definition of . . . 'permit' includes knowledge of what is to be done under the sufferance and permission, and intention that what is done is what is to be done." (*Gregory v. United States,* 17 Blatch. 325, 331.) "The words, 'was permitted to remain out of repair' . . . denote a decided assent. From this definition it is plain that if the city assented it did so from a knowledge of the condition of the walk,—the assent

implied knowledge." (*City of Chicago v. Stearns,* 105 Ill. 554, 558.) "While it is true that the first count had no charge of knowledge on the part of appellant, or that it might have acquired knowledge by the exercise of reasonable care, of the condition of the insulator, yet it does charge that appellant negligently *permitted* the insulator to be upon the bracket in a broken condition. While this count might have properly been a subject of *special* demurrer for the defect mentioned, yet the word 'permitted' implies notice and is sufficient to sustain the count after verdict." (*Diehl v. E. St. L. L. & P. Co.,* 188 Ill. App. 286, 290. Italics ours.) Therefore, if the rule announced in *Groff v. Ankenbrandt, supra,* could have any application to a case like the instant one, it would avail defendants nothing, for the reason that there are sufficient allegations in the declaration from which it might be implied that defendants, with knowledge of the nuisance, permitted it to work injury to plaintiff's real property. As was said in *City of Chicago v. Stearns, supra,* "permitted" denotes a decided assent. Under such a state of facts, as was held in *Martin v. Chicago, R. I. & P. Ry. Co., supra,* the reason for giving notice fails and the rule disappears.

Moreover, the first count charges that Thompson wrongfully and carelessly *caused* or permitted the sewage and waste water from his premises to overflow, etc. Defendants do not seriously contend that the charge in the declaration that Thompson *caused* the sewage and waste water to flow, etc., would not be sufficient if the word "caused" were not followed by the words "or permitted," but they contend that the allegations "caused or permitted" are in the alternative and that as the allegation "or permitted" is not sufficient to constitute a cause of action it neutralizes the allegation "caused" and a demurrer will lie. If we are correct in our ruling as to the full meaning and

effect of the words "or permitted" there is, of course, no merit in the instant contention. Even the authorities cited by defendants concede that if the complainant alleges, in the alternative, two statements of facts, each of which would be legally sufficient to constitute a cause of action, a demurrer will not lie. We do not wish to be understood as approving the rule that defendants seek to enforce. They concede that courts have held that allegations in the alternative are merely defects in form, and in the instant case defendants saw fit to file only a general demurrer. In case actions our courts have always allowed two charges of negligence in a count, and "the rule is that proof of either one of the charges is sufficient to warrant a recovery, provided the negligence is shown to be the proximate cause of the injury." (See *Devine v. Delano,* 272 Ill. 166, 174.)

After a careful consideration of the several questions involved in the instant appeal, we have reached the conclusion that the declaration was not vulnerable to a *general* demurrer and that the trial court erred in sustaining the general demurrer to plaintiff's declaration. The judgment of the circuit court of Cook county is reversed and the cause is remanded with directions to the trial court to overrule the general demurrer and to rule defendants to plead to the declaration.

*Reversed and remanded with directions.*

GRIDLEY and BARNES, JJ., concur.